Copy

| CIRCUIT COURT SUMMONS | NASHVILLE, TENNESSEE |
|---|---|

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20TH JUDICIAL DISTRICT

FILED 11 APR 29 PM 3:24
RICHARD R ROOKER C[LERK]

SHANE A. CARTER, a/k/a SHANE A. BEAN

CIVIL ACTION
DOCKET NO. 11C1642

[X] First
[ ] Alias
[ ] Pluries

**Plaintiff**

Vs.

QBE FIRST INSURANCE AGENCY, INC.

Serve Registered Agent: CORPORATION SERVICE COMPANY

2908 Poston Avenue

Nashville, Tennessee 37203

**Defendant**

Method of Service:
[ ] Davidson County Sheriff
[ ] Out of County Sheriff
[ ] Secretary of State
[ ] Certified Mail
[X] Personal Service / Private Process
[ ] Commissioner of Insurance

D1 "A" w/c, ex AS

**To the above named Defendant:**

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: 4-29-11

RICHARD R. ROOKER
Circuit Court Clerk
Davidson County, Tennessee

By: _____
Deputy Clerk

| ATTORNEY FOR PLAINTIFF or PLAINTIFF'S ADDRESS | James D. R. Roberts, Jr., Roberts & Layman     615-242-2002 |
|---|---|
| | 1700 Hayes Street, Suite 303 |
| | Address |
| | Nashville, Tennessee 37203 |

TO THE SHERIFF:

Please execute this summons and make your return hereon as provided by law.

RICHARD R. ROOKER
Circuit Court Clerk

Received this summons for service this _____ day of _____, 20 ___.

SHERIFF

If you have a disability and require assistance, please contact 862-5204.

EXHIBIT
COLLECTIVE
2

Copy

CIRCUIT COURT SUMMONS.    NASHVILLE, TENNESSEE

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20^(TH) JUDICIAL DISTRICT

2011 APR 29 PM 3:26
RICHARD R. ROOKER, CLERK

[X] First
[ ] Alias
[ ] Pluries

SHANE A. CARTER, a/k/a SHANE A. BEAN

CIVIL ACTION DOCKET NO. 11C1642
D.C.

Plaintiff

Vs.

STERLING NATIONAL INSURANCE AGENCY, INC.

Serve Registered Agent: CORPORATION SERVICE COMPANY

2908 Poston Avenue

Nashville, Tennessee 37203

Defendant

**Method of Service:**
[ ] Davidson County Sheriff
[ ] Out of County Sheriff
[ ] Secretary of State
[ ] Certified Mail
[X] Personal Service / Private Process
[ ] Commissioner of Insurance

D1(B) WK, E

To the above named Defendant:

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: April 29, 2011

RICHARD R. ROOKER
Circuit Court Clerk
Davidson County, Tennessee

By: _____
Deputy Clerk

| ATTORNEY FOR PLAINTIFF or PLAINTIFF'S ADDRESS | James D. R. Roberts, Jr., Roberts & Layman   615-242-2002 |
|---|---|
| | 1700 Hayes Street, Suite 303 |
| | Address: Nashville, Tennessee 37203 |

TO THE SHERIFF:

Please execute this summons and make your return hereon as provided by law.

RICHARD R. ROOKER
Circuit Court Clerk

Received this summons for service this _____ day of _____, 20____.

_____
SHERIFF

If you have a disability and require assistance, please contact 862-5204.

Copy

CIRCUIT COURT ~~~~~~~~~~~~~, NASHVILLE, TENNESSEE

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20TH JUDICIAL DISTRICT

SHANE A. CARTER, a/k/a SHANE A. BEAN

_____

_____
                                                    Plaintiff

Vs.

EMPIRE FIRE AND MARINE INSURANCE COMPANY

Serve through COMMISSIONER OF INSURANCE

_____

_____
                                                    Defendant

CIVIL ACTION DOCKET NO. 11C1642

- [x] First
- [ ] Alias
- [ ] Pluries

**Method of Service:**
- [ ] Davidson County Sheriff
- [ ] Out of County Sheriff
- [ ] Secretary of State
- [ ] Certified Mail
- [ ] Personal Service
- [x] Commissioner of Insurance

D3 W/C,E

**To the above named Defendant:**

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: April 29, 2011

RICHARD R. ROOKER
Circuit Court Clerk
Davidson County, Tennessee

By: _____
Deputy Clerk

| ATTORNEY FOR PLAINTIFF or PLAINTIFF'S ADDRESS | James D. R. Roberts, Jr., Roberts & Layman     615-242-2002 |
| --- | --- |
| | 1700 Hayes Street, Suite 303 |
| | Address |
| | Nashville, Tennessee 37203 |

**TO THE SHERIFF:**

Please execute this summons and make your return hereon as provided by law.

RICHARD R. ROOKER
Circuit Court Clerk

Received this summons for service this _____ day of _____, 20____.

_____
SHERIFF

If you have a disability and require assistance, please contact 862-5204.



IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

2011 APR 29 PM 3: 02

RICHARD R. ROOKER, CLERK

| | |
|---|---|
| SHANE A. CARTER, a/k/a <br> SHANE A. BEAN, <br> PLAINTIFF, <br> <br> v. <br> <br> QBE FIRST INSURANCE AGENCY, INC., <br> Fmr. STERLING NATIONAL INSURANCE <br> AGENCY, INC. <br> and <br> WARDLAW, INC., <br> and <br> EMPIRE FIRE AND MARINE INSURANCE <br> COMPANY, <br> DEFENDANTS. | ) <br> ) <br> ) <br> ) <br> ) Case No. 11C 1642 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Jury of 12 Demanded <br> ) |

## COMPLAINT

Comes now the Plaintiff, Mrs. Shane Carter, by and through counsel, and hereby files this Complaint for breach of contract and Tennessee Code Ann. § 56-17-105 and § 47-18-101, negligence, breach of fiduciary duty, tortious interference with a contract, and civil conspiracy. In support of this Complaint, the Plaintiff states as follows:

## FACTS

1. Plaintiff Shane (Bean) Carter is the record owner the house and lot located at 3905 Tucker Road, Nashville, Davidson County, Tennessee 37218;

2. Mrs. Carter presently resides with her husband, Hysica Carter, at 600 Rothwood Drive, Apt. # E3, Madison, Davidson County, Tennessee 37211. She is a citizen and resident of Davidson County, Tennessee, and has been so at all times relevant to this matter;

3. Defendant QBE First Insurance Agency (Hereinafter "QBE") is a Tennessee corporation whose principal place of business is located at 9800 Muirlands Boulevard, Irvine,

Copy

California 92618. Its Registered Agent is Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203;

4. Defendant Sterling National Insurance Agency, Inc. (Hereinafter "Sterling National") is or was a Tennessee corporation whose original principal place of business was located at 210 Interstate North Parkway, Suite 400, Atlanta, Georgia 30339. Its current principal place of business is at located at 9800 Muirlands Boulevard, Irvine, California 92618. Its Registered Agent is Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203. Upon information and belief, on or about April 25, 2011, Sterling changed its name to QBE First Insurance Agency, Inc.;

5. Defendant Wardlaw Claims Service, Inc. is a Texas corporation, located at Post Office 7817, Waco, Texas 76714-7812. Its Registered Agent is William F. Wardlaw at 8416 Old McGreggor Road, Waco, Texas 76712;

6. Defendant Empire Fire and Marine Insurance Company, (Hereinafter "Empire Fire") is an inactive Tennessee corporation whose original principal place of business was located at 210 Interstate North Parkway, Suite 400, Atlanta, Georgia 30339. Its Registered Agent was the Commissioner of Insurance, Tennessee Department of Commerce and Insurance, 500 James Robinson Parkway, Fifth Floor, Nashville, Tennessee 37234;

7. Mr. Jeff Hayes is an employee of Sterling National and has been so at all times relevant to this litigation;

8. Mr. Tommy Payton is a licensed Tennessee contractor with 25 years of experience in the residential construction field;

9. American Home Mortgage Servicing services Mrs. Carter's mortgage, (hereinafter "American Home");

2

Copy

10. On May 1, 2010, Nashville, Tennessee experienced severe flooding when the Cumberland River and its tributaries overflowed their natural boundaries. (Hereinafter "flood");

11. At the time of the flood, Ms. Carter's home was insured with Sterling National Insurance Agency, Inc.[1] (Policy # FLR611188982, Attached as Exhibit A);

12. The forced-place policy limits are $121,000.00, subject to a deductible;

13. The floodwaters engulfed Mrs. Carter's Tucker Road home, rising to a level of four to five feet above the floor, forcing Mrs. Carter and her husband to evacuate;

14. Since May 1, 2010, Mrs. Carter has had to pay for additional housing, utilities, and expenses related to Sterling National's refusal to repair her home;

15. On Monday, May 3, 2010, Mrs. Carter contacted Sterling National to file a claim;

16. Mrs. Carter's casualty claim was given claim number #20100002479;

17. On or about May 4, 2010, at about 1:30 P.M., Sterling's representative Jeff Hayes called Mrs. Carter and left a message and telephone number;

18. On or about May 4, 2010, Mr. Hayes sent a letter to Mrs. Carter advising that the policy limits were $116,000.00[2]. (Attached as Exhibit B);

19. On or about May 7, 2010, Mrs. Carter's home was inspected by Chris Wardlaw of Wardlaw Claims Service, Inc.;

20. On information and belief, Chris Wardlaw is an employee of Wardlaw Claims Service and was acting as an agent for Sterling, QBE, and Empire Fire;

21. On or about May 8, 2010, Mrs. Carter received a copy of the claim summary and the flood insurance policy, # 001742995;

22. On or about May 11, 2010, American Home responded by letter to Mrs. Carter's notification of loss;

---

[1] This policy is not part of the National Flood Insurance Program (NFIP).
[2] The policy limit is actually $121,000.00.

3

23. On or about May 12, 2010, Sterling National sent a letter in which they advised that a settlement check for $ 22,598.99 would be sent to the American Home Mortgage Servicing. (Attached as Exhibit C);

24. On or about May 14, 2010, Sterling National sent check # 500189 in the amount of $ 22,598.99 to American Home;

25. On or about May 15, 2010, Mrs. Carter had a telephone conversation with Mr. Hayes;

26. On or about May 17, 2010, Mr. Hayes sent a <u>final</u> settlement offer in the amount of $ 22,598.99 to Mrs. Carter.

27. On or about May 19, 2010, American Home requested that Mrs. Carter endorse and return the settlement check;

28. Mrs. Carter was unhappy with the estimate provided by Sterling and hired her own contractor, Mr. Tommy Payton, to estimate the damages;

29. On or about June 18, 2010, Mrs. Carter received the estimate from Mr. Payton indicating the cost to repair the damages would be $ 54,242.94. (Attached as Exhibit D);

30. On or about June 21, 2010, Mrs. Carter sent Mr. Payton's estimate via facsimile to Sterling National;

31. On or about June 22, 2010, and again on or about June 26, 2010, Mrs. Carter spoke with Mr. Hayes by telephone concerning the fact the damages were greatly in excess of the amount Sterling National had offered. In this conversation, Mr. Hayes told her to do some of the repairs herself. Mrs. Carter expressed concerns that the electrical wiring's saturation with flood waters would present a fire hazard. Mr. Hayes informed her that the wiring did not need to be replaced and that they could "get around [Metro] codes" by doing the repairs and not having the Metropolitan Codes Department inspect the same;

Copy

32. Mrs. Carter contacted the Metropolitan Codes Department and was specifically told that if Mr. Payton was caught repairing her the home without a proper inspection, that he could lose his contractor's license and the repairs could be halted;

33. Mrs. Carter was also specifically advised by the Metropolitan Codes Department to speak to an attorney;

34. During the conversation either on June 18, 2010 or June 26, 2010, Mr. Hayes stated that Sterling would send another adjustor;

35. On or about the morning of June 28, 2011, Mr. Payton met Wardlaw's employee/adjustor Mr. Ryan Beers at the Tucker Road property. At this meeting, Mr. Beers offered to direct additional repair work to Mr. Payton if Mr. Payton would reduce his bid. Mr. Payton refused, stating that the work could not be done that cheaply and that it would not be fair to Mrs. Carter;

36. On or about June 29, 2010 and July 12, 2010, Mrs. Carter spoke with both Mr. Payton and Mr. Beers about increasing the damage estimate;

37. During these telephone conversations, Mr. Beers stated that he could increase the amount Sterling would pay, but refused to replaced the dangerous water-logged wiring;

38. During a heated three-way conference call between Mrs. Carter, Mr. Payton, and Mr. Beers, Mr. Payton insisted that he could lose his license if the flooded wiring was not replaced as required by the Metropolitan Codes Department. After Mrs. Carter disconnected, Mr. Beers specifically offered to steer five (5) more houses needing repair work to Mr. Payton if he would reduce his estimate to $40,000.00;

39. After Mr. Payton rejected Mr. Beer's "revised offer," Sterling National withdrew its $ 40,000.00 damage estimate and returned to his previous $ 22,598.99 offer;

Copy

40. On or about July 13, 2010, Sterling National agreed to increase the damage estimate by $2,738.61. (Attached as Exhibit E);

41. On or about July 13, 2010, and again on or about July 20, 2010, Mrs. Carter continued to have telephone conversations with Mr. Hayes about Mr. Beer's damage estimate;

42. On or about July 16, 2010, Mrs. Carter received a copy of Mr. Beer's damage estimate from Sterling National. (Attached as Exhibit F);

43. On or about July 19, 2010, American Home sent a letter to Mrs. Carter advising that they had received Check # 500667 in the amount of $ 2,738.61. (Attached as Exhibit G);

44. On July 22, 2010, Mrs. Carter took the Metropolitan Codes Department's employee's advice and sought legal assistance;

45. On or about August 4, 2010, Mrs. Carter's counsel advised Sterling National of her representation and requested the "appraisal process" commence. (Attached as Exhibit H);

46. On or about August 4, 2010, Sterling National acknowledged Mrs. Carter's demand for an appraisal. This letter further provided her a copy of the flood policy;

47. On or about August 9, 2010, Sterling National advised that they had selected Mr. Beers to be their appraiser. (Attached as Exhibit I);

48. On or about August 31, 2010, counsel sent Mr. Hayes a letter with a copy of Mr. Payton's affidavit. The letter requested that Mr. Hayes respond "before this matter gets out of hand." (Attached as Exhibit J);

49. On or about September 8, 2010, Mr. Hayes responded on behalf of Sterling National, denying that Mr. Beers had attempted to bribe Mr. Payton. The letter further claimed that Mr. Beers had "no authority to give Mr. Payton" additional work as its defense to the charge that Mr. Beers would direct additional work to Mr. Payton in exchange for reducing his estimate. (Attached as Exhibit K);

6

Copy

50. On or about September 30, 2010, counsel advised Mr. Hayes in writing that Mrs. Carter objected to the inclusion of Mr. Beers in the appraisal process. (Attached as Exhibit L);

51. On October 6, 2010, Mrs. Carter met with a reporter from Channel 17 Fox News which did a lead feature on Sterling National's continued refusal to properly repair her house. (http://www.fox17.com/template/cgi-bin/archived.pl?type=basic&file=/newsroom/top_stories/videos/archive/2010/10/8cFIbOwP.xml).(text only) When contacted by Channel 17, Sterling National declined to comment;

52. On or about October 19, 2010, counsel sent Mr. Hayes a letter concerning the selection of the umpire for the appraisal process. In this letter, counsel again raised concerns about Mr. Beers' participation in the process after such a serious charge had been levied him. (Attached as Exhibit M);

53. On or about October 22, 2010, Mr. Hayes responded, asserting that Mrs. Carter had no right to "veto" Sterling National's choice of appraiser. This letter further claims that Mr. Hayes and Sterling did "not find the allegations [of Mr. Beer's bribery] to be credible." (Attached as Exhibit N);

54. On or about November 5, 2010, mistakenly believing that the policy was part of the National Flood Insurance Program, Mrs. Carter sought the assistance of Congressman Jim Cooper. (Attached as Exhibit O);

55. On or about November 2010, Sterling National retained local counsel;

56. On or about November 22, 2010, counsel began working together to move the appraisal process forward(Attached as Exhibit P);

57. On or about December 1, 2010, counsel discussed the selection of Rusty Powell from Servpro of Belle Meade (Hereinafter "Servpro") to be the umpire in the appraisal process;

7

Case 3:11-cv-00437   Document 1-2   Filed 05/10/11   Page 10 of 20 PageID #: 17

Copy

58. Throughout December 2010, and January 2011, counsel worked to arrange Servpro's inspection and appraisal the flood damage;

59. At Ms. Powell's direction, a "Mold and Level 3 Contamination Inspection & Remedial Guideline" was prepared by microbiologist Jim Marr of Environmental Sciences, LLC prior to Servpo's inspection;

60. This inspection report found "visible mold" on the remaining sheet rock walls due to the "Level 3 (Black Water) water intrusion...;"

61. After receiving the mold report, Servpro inspected and appraised the property damage on February 21, 2011;

62. On or about February 24, 2011, Servpro estimated cost of remediation damages to be $ 6,216.30. (Attached as Exhibit Q);

63. On or about March 11, 2011, Servpro estimated the amount to repair the flood damage to be $46,220.88. (Attached as Exhibit R);

64. On March 28, 2011, ten (10) months after the devastating flood, Sterling-National finally agreed to pay $ 52,437.18 to repair Mrs. Carter's home; (Attached as Exhibit S) and,

65. Mrs. Carter has incurred substantial damages over and above the cost of repair because she has had to make alternate living arrangements for the past year.

## COUNT I
## BREACH OF CONTRACT

66. Mrs. Carter adopts paragraphs numbered 1 through 65 of this complaint as if restated verbatim;

67. Plaintiff asserts that the Defendants have all breached the insurance contract by their collective failure to abide by its terms and conditions, and to and repair Mrs. Carter's home as required;

8

Copy

68. The Defendant's refusal to pay for the necessary repairs is a breach of the insurance contract. Plaintiff has been damaged as a result and is entitled to compensatory damages of $350,000.00;

## COUNT II
## VIOLATIONS OF TENNESSEE CODE ANN. § 56-7-105: Bad Faith Refusal to Pay

69. Mrs. Carter adopts paragraphs numbered 1 through 68 of this complaint as if restated verbatim;

70. Tenn. Code Ann. § 56-7-105 states:

> (a) The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest on the bond, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that the failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond; and provided, further, that the additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.
>
> (b) In any action against an unauthorized foreign or alien insurer or bonding company upon a contract of insurance or fidelity bond issued or delivered in this state to a resident of this state or to a corporation authorized to do business in this state, if the insurer or bonding company has failed for thirty (30) days after demand prior to commencement of the action to make payment in accordance with the terms of the contract or fidelity bond, and it appears to the court that the refusal was vexatious and without reasonable cause, the court may allow to the plaintiff a reasonable attorney fee and include the fee in any judgment that may be rendered in the action. The fee shall not exceed twelve and one half percent (12.5%) of the amount that the court or jury finds the plaintiff is entitled to recover against the insurer or bonding company, but in no event shall the fee be less than twenty-five dollars ($25.00). Failure of an insurer or bonding company to defend the action shall be deemed prima facie evidence that its failure to make payment was vexatious and without reasonable cause.

9

Copy

71. The Defendants' $ 22,598.99 settlement offer was made in bad faith in light of Mr. Tommy Payton's estimate and Servpro's damage estimate indicating that twice the amount of repairs would be required;

72. The Defendants' continued insistence on using Mr. Beers as their claims adjustor in light of his documented attempt to bribe Mr. Payton into reducing his estimate demonstrates their bad faith in refusing to pay;

73. Sterling National's and the other Defendants' withdrawal of the $40,000.00 estimate after Mr. Peyton spurned their attempted bribe demonstrates their retaliation and bad faith in refusing to pay;

74. The Defendants' refusal to pay for the additional expenses and costs Mrs. Carter incurred as a direct result of their failure to repair her home demonstrates their bad faith in refusing to pay;

75. Mrs. Carter has been damaged as a result and is entitled to damages therefore in the form of the statutory 25% penalty, and all additional expenses, loss, and injuries including attorney fees;

76. Mrs. Carter is entitled to the statutory penalty of $ 13,560.74 ($ 54,242.94 x 0.25 = $ 13,560.74), plus expenses, costs, and attorneys fees;

### COUNT III
### VIOLATIONS OF TENNESSEE CODE ANN. § 47-18-101 ET. SEQ.
### THE TENNESSEE CONSUMER PROTECTION ACT

77. Mrs. Carter adopts paragraphs numbered 1 through 76 of this complaint as if restated verbatim;

78. The Defendants' offer of a bribe to Mr. Peyton in the form of additional work in exchange for reducing his estimate is an unfair and deceptive business practice;

10

Copy

79. The Defendants' insistence on using Mr. Beers as the claims adjustor after he attempted to bribe Mr. Payton is an unfair and deceptive business practice;

80. The Defendants' "bad faith" refusal to pay the damage claim promptly and in full is an unfair and deceptive business practice;

81. The Defendants' clear racial bias towards Mr. Carter is an unfair and deceptive business practice;

82. The above-referenced acts were all committed willfully, knowingly, and maliciously;

83. Under the Tennessee Consumer Protection Act, Mrs. Carter is entitled to treble or punitive damages, costs, and attorneys fees;

## COUNT IV
## NEGLIGENCE AND BREACH OF FIDUCIARY DUTY

84. Mrs. Carter adopts paragraphs numbered 77 through 83 of this complaint as if restated verbatim;

85. The Defendants have both a contractual and fiduciary duty under the insurance contract to treat Mrs. Carter fairly and comply with the terms therein;

86. The Defendants' above-referenced conduct shows a willful and intentional disregard for their contractual obligations;

87. The Defendants' failure to properly appraise Mrs. Carter's home breached the actual and "good faith" requirement of the insurance contract;

88. The Defendants' failure to properly appraise Mrs. Carter's home was negligent and breached its duty to use honest and competent adjustors;

89. Mrs. Carter has been damaged as a result and is entitled to damages therefore in the form her expense, loss, and injury from the same;

11

Copy

## COUNT V
## TORTIOUS INTERFERENCE WITH A CONTRACT

90. Plaintiffs adopt paragraphs numbered 1 through 89 of this complaint as if restated verbatim;

91. Nationally there are five elements for Tortious Interference with a Contract:

(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff. (*Teleflex Information Systems Inc., v. Arnold*, 132 N.C. App. 689, 513 S.E. 2d. 85 (1999), see also *45 Am. Jur. 2d Interference § 5;*

92. In Tennessee, this cause of action is also recognized. The required elements are similar to the national standard set forth above:

(1) that a legal contract existed;
(2) that the defendant was aware of the contract;
(3) that the defendant intended to induce a breach of the contract;
(4) that the defendant acted with malice;
(5) that a breach of the contact occurred;
(6) that the breach was the proximate result of the defendant's conduct; and,
(7) that the breach injured the plaintiff.

*Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W. 3d 383 (Tenn. 2002), see also *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 822 (Tenn. 1994), and *Baker v. Hooper*, 50 S.W.3d 463, 468 (Tenn. Ct. App. 2001);

93. Once these elements have been satisfied, damages are allowed under Tenn. Code Ann. § 47-50-109:

"It is unlawful for any person by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of contract. The party injured by such breach may bring suit for the breach and for such damages;"

94. Wardlaw and Mr. Beers tortiously interfered with Mrs. Carter's insurance contract by inducing it to wrongfully refuse to pay the full amount required to repair her home;



95. Mrs. Carter has been damaged as a result and is entitled to compensatory and punitive damages therefore;

## COUNT VI
## CIVIL CONSPIRACY

96. Plaintiffs adopt paragraphs numbered 1 through 95 as if restated verbatim;

97. A Civil Conspiracy is defined as a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Ledee v. Devoe, 2001 G. App. 15 549 S.E. 2d 167 (2001) see also 15A C.J.S. Conspiracy § 1;*

98. The gravamen of the civil action for conspiracy is a civil wrong which has been committed pursuant to the conspiracy and which results in damage to the plaintiff. *Modern Materials Inc., v. Advanced Tooling Specialists Inc., 2006 Wis 2d 435, 557 N.W. 2d 835 (Ct. App. 1996); see also 15A C.J.S. Conspiracy § 1;*

99. In order to establish a civil conspiracy, Mrs. Carter must prove the following:

   (1) an association of two or more persons;
   (2) an unlawful objective;
   (3) an agreement or understanding with regard to the objective and the manner in which it was to be achieved;
   (4) commission of an unlawful, overt act in furtherance of the conspiracy, and;
   (5) injury as a result of the overt act.
   *4 C.O.A. 2d 517§ 5-15;*

100. At a minimum, to show conspiracy there must be facts to show some agreement, explicit or otherwise, between alleged conspirators on a common end sought and some cooperation toward attainment of that end. A complaint must allege formation and operation of conspiracy; [a] wrongful act or acts done pursuant to the conspiracy, and damage resulting from such act or acts. *Thomas ex. rel. Gramling v. Mallett, 2005 WI 129, 289 Wis. 2d 236, 701 N.W. 2d 523 (2005), see also 15A C.J.S. Conspiracy § 1;*

13

101. In Tennessee, civil conspiracy has long been defined as a "combination between two or more persons to accomplish by concert an unlawful purpose, or a lawful purpose not in itself unlawful by unlawful means." *Dale v. Thomas H. Temple Co.*, 186 Tenn. 69, 90, 208 S.W. 2d 344, 353 (1948), see also *Huckeby v. Spangler*, 521 S.W. 2d 568 (Tenn. 1975); *Braswell v. Carothers*, 863 S.W.2d 722,727 (Tenn. Ct. App. 1993); *Kirksey v. Overton Pub, Inc.*, 739 S.W. 2d 230, 236 (Tenn.Ct. App. 1987);

102. In Tennessee, the requisite elements of the cause of action are common design, concert of action and an overt act. Injury to person or property, resulting in attendant damage must also exist. *Koehler v. Cummings*, 380 F. Supp. 1294., 1313 (M.D. Tenn. 1974);

103. The facts and allegations in this complaint show the Sterling National, QBE, Mr. Jeff Hayes, Mr. Ryan Beers, and Empire Fire acted together as an association, and acted in their own selfish interests;

104. In addition to the above-referenced facts, Sterling National, QBE, Mr. Jeff Hayes, Mr. Ryan Beers, and Empire Fire have conspired to engage in the following acts, violating Tennessee law as outlined herein:

    a) Breach of Contract;
    b) Tortious interference with a contract; and
    c) Deceptive behavior in violation of the Tennessee Consumer Protection Act;

105. Mrs. Carter has been damaged as a result and is entitled to damages therefore;

## CONCLUSION

Mrs. Carter is a completely innocent victim of the defendants' intentional and willful refusal to pay her flood damage claim. Sterling National hired a dishonest adjustor who attempted to bribe Mrs. Carter's contractor with promises for future employment if he would reduce his estimate to Mrs. Carter's detriment. Even after Mr. Beer's fraud was exposed, the

14

Copy

Defendants denied his wrongdoing, and defended Mr. Beers, insisting on his continued participation in the estimating of Mrs. Carter's damages;

Even after an independent appraiser determined Mrs. Carter's damages were more than twice Mr. Beer's estimate, Sterling National refused to compensate her appropriately. The facts show that at all relevant times Sterling National and the other Defendants acted willfully, knowingly, maliciously, and in "bad faith" in dealing with Mrs. Carter; and,

Mrs. Carter is entitled to be made whole from her flood loss and the Defendants should be punished for their actions.

ACCORDINGLY, Mrs. Carter prays this Honorable Court to grant the following relief:

1. That process issue and the Defendants be served with this Complaint as required and to Answer under the Tennessee Rules of Civil Procedure;

2. That an Order be entered declaring that the Sterling National, QBE, Wardlaw, and Empire Fire breached the insurance contract by their failure to properly pay Mrs. Carter's casualty claim and awarding $350,000.00 in damages;

3. That an Order be entered declaring that the Sterling National, QBE, and Empire Fire's refusal to pay her claim was in bad faith and award statutory penalties as defined under Tenn. Code Ann. § 56-7-105 and award a 25% penalty, and all additional expense, loss, and injury including attorney fees;

4. That an Order be entered declaring that the Sterling National, QBE, Wardlaw, and Empire Fire's actions are unfair and deceptive business practices as defined under Tenn. Code Ann. § 47-18-101 et.seq., and award treble or punitive damages, costs, and attorneys fees;

5. That an Order be entered declaring that the Sterling National, QBE, Wardlaw, and Empire Fire's actions were negligent and award $350,000.00 in damages;

Copy

6. That an Order be entered declaring that the Sterling National, QBE, Wardlaw, and Empire Fire's actions breached their fiduciary duties to Mrs. Carter and award $350,000.00 in damages;

7. That an Order be entered granting judgment against Sterling National, QBE, Wardlaw, and Empire Fire's for their tortious interference with the insurance contract, and that damages be awarded in favor of Mrs. Carter in treble the amount of their actual damages, or in the amount of $500,000.00, whichever is greater, and punitive (treble) damages to be set as provided by law;

8. That an Order be entered finding that Sterling National, QBE, Wardlaw, and Empire Fire's engaged in a civil conspiracy to commit all the acts alleged, and that damages be awarded in favor of Mrs. Carter in treble the amount of their actual damages, or in the amount of $1,000,000.00, whichever is greater, and punitive damages to be set as provided by law;

12. That an Order be entered granting a judgment in favor of Mrs. Carter for her attorneys fees and costs as provided law; and,

13. Such other relief as may be equitable and just.


Respectfully Submitted,


James D. R. Roberts, BPR # 017537
Janet L. Layman, BPR #021569
ROBERTS & LAYMAN, Attorneys at Law
1700 Hayes Street, Suite 303
Nashville, Tennessee 37203
614-242-2002 office
615-242-2042 facsimile
Attorneys for Mrs. Shane Carter

16

Copy

## VERIFICATION

I hereby verify that all factual averments set forth in this Complaint are true and correct to the best of my knowledge

*[signature]*
Shane Carter

**STATE OF TENNESSEE**        )
**COUNTY OF DAVIDSON**        )

Sworn to and subscribed before me this 28 day of April, 2011.

*[signature]*
NOTARY PUBLIC
My commission expires: May 20, 2014

*[Notary seal: BRIAN I LONG, STATE OF TENNESSEE NOTARY PUBLIC, COUNTY OF DAVIDSON]*